UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUIS A. MERCADO-COLLAZO,
     Plaintiff,

v.                                  CIVIL ACTION NO. 19-01221-MPK

COMMISSIONER of the
SOCIAL SECURITY ADMINISTRATION,
     Defendant.

MEMORANDUM AND ORDER ON
MOTION FOR ORDER REVERSING THE COMMISSIONER'S DECISION (#17) AND
MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (#18).

KELLEY, U.S.M.J.

I. <u>Introduction</u>.

In 2013, plaintiff Luis A. Mercado-Collazo filed an application for social security disability insurance benefits (DIB) under Title II of the Social Security Act, alleging a disability onset date of October 20, 2011. (TR[1] at 399-400.) [2] The claim was denied initially (TR at 96-99), and again on reconsideration. (TR at 100-03.) Plaintiff then filed a request for a hearing before an administrative law judge (ALJ) (TR at 337); the hearing was held on August 11, 2016. (TR at 70-

---

[1] The abbreviation "TR" refers to the administrative record, and the page numbers are those in the administrative record, lower right-hand corner.

[2] The alleged disability onset date was thereafter amended to October 23, 2012. (TR at 412.)

95.) Mr. Mercado, who was represented by counsel, testified, as did a vocational expert. (TR at 70-95.)

On September 20, 2016, the ALJ issued a decision unfavorable to plaintiff. (TR at 40-54.) On January 11, 2019, the Appeals Council denied plaintiff's request for review. (TR at 1-4.) As a result of the denial, the ALJ's decision de facto became the final decision of the Commissioner, subject to judicial review under 42 U.S.C. § 405(g). The instant action was filed on March 8, 2019. (#1.)

Mr. Mercado filed a motion to reverse the Commissioner's decision (#17); defendant countered with a motion for an order affirming the decision of the Commissioner. (#18.) The cross-motions stand ready for decision.

## II. Background.

The underlying facts are not disputed.

### A. Medical Evidence.

Mr. Mercado challenges the ALJ's evaluation of his mental health medical evidence only. (#17 at 1.)[3] Consequently, this recitation will focus on his mental health medical evidence, rather than evidence related to his physical conditions.

Plaintiff began treating with Dr. Eduardo Caussade, a psychiatrist, on October 23, 2012. (TR at 695.) His chief complaints were depression, anxiety, insomnia, low self-esteem, lack of energy to do things, irritability, and bad temper. (TR at 696.) Mr. Mercado was diagnosed with a GAF of 50, and was prescribed Ambien, Klonopin, and Zoloft. (TR at 696-97.) Records reflect that he thereafter had appointments with Dr. Caussade on about a monthly basis from November

---

[3] The first issue identified by Mr. Mercado is: "Whether the Commissioner erred . . . in not evaluating properly the mental medical evidence as require[d] by law[?]"

2012 through June of 2016. (TR at 697-706.) The copies of Dr. Caussade's progress notes are largely illegible. Brief words and phrases can be discerned as, for example, "depressed and anxious" (TR at 690); "depressed and anxious, frustrated[,] and ambivalent" (TR at 699); "nice appetite" (TR at 700); "desperate and hopelessness, lack of energy[,] or desire to go out" and "nice appetite; sleeping ok pills, medication as directed" (TR at 701); "sleeping fairly well [with] pills, nice appetite[,] [w]alks (exercise) in the afternoon along [with] wife" (TR at 702); "sad and depressed . . . but spontaneous affect restricted" and "sad & depressed at this time" (TR at 703); "spends the day irritable" (TR at 704); "sad & depressed, lack of energy[,] and desire to do things." (TR at 706.)

On August 15, 2013, plaintiff was evaluated by psychiatrist Luis A. Toro on referral from the disability determination program. (TR at 571-72.) Dr. Toro diagnosed major depression, "recurrent, moderate," with "marital problems, divorce, loss of job, debts, [and] financial problems as stressors[.]" (TR at 572.) Dr. Toro described Mr. Mercado as "somewhat unkempt[,]" "in good contact with reality[,]" cooperative with a blunt affect, and appearing anxious. (TR at 572.) Plaintiff's mood was "moderately depressed[,]" and he was on the verge of tears talking about his marital and business problems. (TR at 572.) Mr. Mercado appeared in no physical or emotional distress, showed "no evidence of unusual or bizarre behavior or suicidal or homicidal tendencies[,]" and evidenced no disorganization of thought processes, ideas of reference, delusions, or hallucinations. (TR at 572.) He was oriented to place, person, and time, his memory was fairly well preserved, and while his attention, concentration, and retention were "moderately diminished[,]" his judgment and reasoning were intact. (TR at 572.) Dr. Toro opined that plaintiff was able to handle funds, but "probably not capable of normal interpersonal relationships." (TR at 572.) His prognosis was guarded. (TR at 572.)

On October 22, 2013, Jennifer Cortes, Psy.D., a state psychologist reviewing plaintiff's initial disability claim, found he had depressive syndrome with moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, but no repeated episodes of decompensation. (TR at 295.) Dr. Cortes reviewed Dr. Toro's report wherein he noted that plaintiff had fair hygiene, a moderately depressed mood with blunted affect, and anxious appearance. (TR at 295.) Mr. Mercado was well oriented with moderately diminished attention and concentration. (TR at 295.) The diagnosis was major depressive disorder, moderate. (TR at 295.)

Dr. Cortes observed that Dr. Caussade also diagnosed major depressive disorder but described much more severe symptoms which she found unsupported by the medical evidence of record from other treating sources. (TR at 295-96.) The consultative examination raised issues about the validity of Dr. Caussade's report and Mr. Mercado's credibility. (TR at 296.) She stated that plaintiff's medications were not the standard to treat a severe condition. (TR at 296.)

Dr. Cortes considered the report submitted by Dr. Marrero,[4] who also diagnosed plaintiff with major depressive disorder as well as anxiety disorder. (TR at 296.) She questioned the validity of the report since it was almost identical to others Dr. Marrero had filed and there were no treatment progress notes supporting his statements. (TR at 296.)

Overall, Dr. Cortes concluded that the evidence supported a moderate condition, and that Mr. Mercado was "able to understand, remember, and execute simple one or two step instructions, able to maintain attention, sustain concentration, persistence[,] and pace, adapt to changes[,] and interact adequately with others." (TR at 296.)

---

[4] Hector Marrero, Ph.D., is plaintiff's psychologist. The Psychological Medical Report from Dr. Marrero was dated April 5, 2013. (TR at 529-33.)

On May 7, 2014, Zulma Nieves, Psy.D., a state agency psychologist, undertook a Mental Residual Functional Capacity Assessment of Mr. Mercado on reconsideration of his claim for benefits. (TR at 319-22.) Dr. Nieves concluded that the available data suggested plaintiff had no limitations in his ability to remember and understand very short and simple instructions and workplace procedures, but that he had moderate limitations in his ability to remember more detailed instructions. (TR at 319.) Mr. Mercado had no limitations in his ability to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions, but he had moderate limitations in the ability to sustain attention throughout extended periods of time, to perform at a consistent pace, and to maintain a regular schedule. (TR at 320.) The available data supported the conclusion that plaintiff had "moderate limitations in the ability to interact appropriately with the general public, supervisor[s,] and coworkers[,]" and "the ability to maintain socially appropriate behavior[,]" and "to adhere to basic standards of neatness and cleanliness." (TR at 320.) The record reflected Mr. Mercado having moderate limitations in responding appropriately to basic workplace setting changes, but that he had a good ability to take appropriate precautions in hazardous situations, to utilize transportation, to organize, and to set goals. (TR at 321.)

Dr. Nieves opined that Dr. Caussade's assessment that plaintiff suffered from a severe condition was not supported by other treating sources in the record. (TR at 321.) None of the medications Mr. Mercado was taking "are standard care for referential thinking, circumstantial speech or severity" as described by Dr. Caussade. (TR at 321.) After seeing plaintiff since 2012, Dr. Caussade was unable to state if plaintiff could manage funds despite stating that he had poor attention and concentration. (TR at 321.) Dr. Marrero's report was nearly identical to others he submitted, which raised questions about its validity, particularly where no progress notes

supported the report. (TR at 321.) In summary, Dr. Nieves stated that the "[o]verall evidence endorses [a] moderate condition. [Mr. Mercado was] able to understand, remember[,] and execute simple one or two step[] instructions, able to maintain attention, sustain concentration[,] persistence [,] and pace, adapt to changes[,] and interact adequately with others." (TR at 321.)[5]

On June 28, 2016, Dr. Caussade completed a Mental Residual Functional Capacity Questionnaire. (TR at 716-20.) Dr. Caussade described Mr. Mercado as suffering from major depression for which he was being treated with psychotherapy along with psychotropic mediations. (TR at 716.) Again, Dr. Caussade's handwriting is mostly illegible, but on a checklist he found plaintiff to have the following symptoms: pervasive loss of interest; decreased energy; feelings of guilt or worthlessness; impairment in impulse control; poverty of content of speech (low pitch); generalized persistent anxiety; mood disturbances (depression/anxiety); difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; change in personality (irritable & bad temper); apprehensive expectation; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; motor tension; emotional lability; deeply ingrained, maladaptive patterns of behavior; pathologically inappropriate suspiciousness or hostility (ideas of reference); easy distractibility; memory impairment – short and intermediate; and sleep disturbance. (TR at 171.) According to Dr. Caussade, Mr. Mercado

---

[5] Plaintiff complains that Dr. Cortes questioned the validity of Dr. Marrero's report because it was almost identical to other reports he had submitted but yet Dr. Nieves' report was nearly identical to that of Dr. Cortes. (#17 at 6-8.)  The comparison is inapt. The two agency doctors were reviewing the same static evidentiary record. That their reviews could be parallel is understandable. Dr. Marrero, on the other hand, was seeing a patient over time, during which some fluidity and variation in symptoms or severity would be expected. Mr. Mercado himself testified how his condition went up and down. That Dr. Marrero's reports remained the same could legitimately raise questions of validity.

was limited but satisfactory in his ability to ask simple questions or request assistance; unable to meet competitive standards in remembering work-like procedures, understanding and remembering very short and simple instructions, maintaining attention for two hour segments, maintaining regular attendance and being punctual, and making simple work work-related decisions; and had no useful ability to function to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, and being aware of normal hazards and taking appropriate precautions. (TR at 718.)

Plaintiff was hospitalized by Dr. Caussade for four days in April 2016, where his identified problems were listed as isolation, poor interpersonal relationships, mood disorder, difficulty making decisions, and poor management of emotions, with stressors noted to be familial and economic. (TR at 255.) He was treated with group occupational therapy and recreational therapy, then discharged with recommendations to establish a plan for activities to do with leisure time, outpatient follow-up with a psychologist and admission to a support group with the goal of preventing relapses. (TR at 262.)

Dr. Marrero, plaintiff's psychologist, completed a Mental Residual Functional Capacity Questionnaire on July 8, 2016. (TR at 721-725.) According to Dr. Marrero, Mr. Mercado was

initially evaluated on September 10, 2012, and then had five office visits in 2016. (TR at 721.) [6] He was diagnosed with major depression, recurrent, and anxiety disorder. (TR at 721.) Dr. Marrero checked many of the same symptoms as had Dr. Caussade, but there were differences. While Dr. Caussade found Mr. Mercado to have impairment in impulse control; poverty of content of speech (low pitch); persistent disturbances of mood or affect; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; motor tension; emotional lability; deeply ingrained, maladaptive patterns of behavior; and pathologically inappropriate suspiciousness or hostility (ideas of reference), Dr. Marrero did not. On the other hand, Dr. Marrero checked symptoms that Dr. Caussade did not: somatization unexplained by organic disturbance, recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress, pressures of speech, and loss of intellectual ability of 15 IQ points or more. (TR at 722.) Dr. Marrero found that plaintiff had seriously limited, but not precluded, mental abilities and aptitudes that differed from Dr. Caussade's assessment, and also determined that Mr. Mercado was unable to meet competitive standards or had no useful ability to function in eleven of the sixteen delineated categories. (TR at 723.)

---

[6] There appear to be only two progress report notes from Dr. Marrero in the record dated September and December 2016. (TR at 17, 33.) They offer little information, apart from the indication that Mr. Mercado was oriented, coherent, and relevant, was attending medical visits with Dr. Caussade, was on the "same meds," and was participating in psychotherapy sessions. (TR at 17, 33.)

There are two Psychological Up-Date Reports dated March 12, 2014, and February 8, 2016, respectively, by Dr. Marrero that are essentially identical. (TR at 583, 682.) Mr. Mercado is diagnosed in each with "major depression, recurrent – anxiety disorder" along with the opinion that "he does not possess the functional capacity to persist in a competitive work setting, and complete a normal workday, without interruptions." (TR at 583, 682.)

B. <u>Administrative Hearing Testimony</u>.

1. <u>Mr. Mercado</u>.

At the administrative hearing, Mr. Mercado testified that he was then fifty-two years old and had completed high school. (TR at 75-76.) He was not able to speak or read English; he spoke and read Spanish. (TR at 76.) Plaintiff was last employed in 2012. (TR at 76.) He had worked at a chicken plant and had been self-employed selling auto parts. (TR at 76.)

Mr. Mercado believed his mental health issues were precipitated by a difficult divorce after a twenty-year marriage, and the fact that his teenage daughter left home and became a drug addict. (TR at 78.) He became depressed and sought psychiatric treatment first with a doctor in Caguas, and then with Dr. Caussade in Aybonito beginning in October 2012. (TR at 78-80.) Plaintiff described his condition as going up and down, that he would be calm but then problems would resurface and he would lose mental control. (TR at 80.) He had appointments with Dr. Caussade monthly, and he also saw Dr. Marrero, a psychologist, every two or three months, since 2012. (TR at 83.)

A few months prior to the administrative hearing, Mr. Mercado was hospitalized by Dr. Caussade for part of a week to treat anxiety, lack of attention and nerves, and he improved. (TR at 84.) Of his medications, Klonopin, which he takes daily, makes him the calmest. (TR at 84-85.)

With respect to physical issues, Mr. Mercado described having a problem with gout in his knee since 2007 or 2008, for which he takes medication that helps. (TR at 85.) He claimed that it always hurt, and that the gout attacked different parts of his body. (TR at 86.) He explained that during a flare-up, the pain would last two or three days, but that he would be a bed for a week with his leg up while the swelling went down. (TR at 86.) The flare-ups would occur every two or three months. (TR at 86.) In addition to gout, plaintiff has high blood pressure, for which he takes

medication, and diabetes. (TR at 87.) He has difficulty sleeping, and his lower back bothers him with pain radiating down his right leg. (TR at 88-89.)

Although Mr. Mercado claimed to have had no income since approximately 2012, he explained that his elderly father with whom he lived helped him financially, as did his siblings. (TR at 80-82.) He had worked doing the auto parts job for five years, and before that he had worked delivering chickens for ten to thirteen years. (TR at 83-84.)

Plaintiff testified that he had difficulties relating to other people around him because his mood changed when he got depressed. (TR at 90.) He was able to go to church and other places where there are people, as long as there was not too much noise. (TR at 90.)

2. Alina Kurtanich.

A vocational expert, Alina Kurtanich, testified at the administrative hearing. The ALJ posed the following hypothetical:

> Please assume a hypothetical person of the same age, education and work experience as [Mr. Mercado], and please also assume that this hypothetical person can lift 50 lbs. occasionally, 25 lbs. frequently, can stand and walk for a total of six hours in a workday. Can sit for a total of six hours in a workday, and can frequently climb . . . – stairs and ramps and can also frequently climb ladders, ropes or scaffolds, and this hypothetical person can frequently stoop, kneel, crouch, and crawl, and this hypothetical person can perform . . . simple, routine tasks and can have only occasional . . . interaction with coworkers and supervisors, and the public. Could this person perform [Mr. Mercado's] past work?

(TR at 90.) Ms. Kurtanich responded in the negative, but that there were other jobs in the national economy that the hypothetical person could perform, such as a laundry worker, a janitor, and a hand packager. (TR at 90-91.) Altering the inquiry to reflect that the hypothetical person could only lift 20 lbs. occasionally and 10 lbs. frequently, and could never interact with coworkers and the public, the ALJ asked if this person could perform Mr. Mercado's past work. Ms. Kurtanich again responded in the negative and noted that although there were no transferable skills for other

jobs, this hypothetical person could still perform other unskilled jobs such as a garment sorter, a marker, and an electronic worker. (TR at 91-92.) If the hypothetical person could not meet a workday, Ms. Kurtanich opined that he could not perform any job that exists in the national economy. (TR at 92.)

III.   Standard of Review.

Title 42 U.S.C. § 405(g) provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]

Where, as here, an ALJ's decision regarding social security benefits is appealed, and the Appeals Council denies a request for review, the ALJ's decision is deemed to be the Commissioner's final determination. *See Purdy v. Berryhill*, 887 F.3d 7, 12 (1st Cir. 2018).

The court's role in reviewing a final decision of the Commissioner under the statute is circumscribed: "We must uphold a denial of social security disability benefits unless the Secretary has committed a legal or factual error in evaluating a particular claim. . . . The Secretary's findings of fact are conclusive if supported by substantial evidence." *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996) (internal citations and quotation marks omitted); *Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (internal citations and quotation marks omitted) (The standard when reviewing "the correctness of the Commissioner's decision" is "whether the final decision is supported by substantial evidence and whether the correct legal standard was used.").

Last year, the Supreme Court had occasion to discuss the term "substantial evidence" in the social security context:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, -, 135 S. Ct. 808, 815, 190 L. Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see*, e.g., [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420 [(1971)] (internal quotation marks omitted). It means - and means only - "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Purdy*, 887 F.3d at 13 (internal citations, quotation marks, and alterations omitted) ("Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not. . . . Rather, we must uphold the Commissioner's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion. . . .Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). "Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts." *Malone v. Colvin*, 238 F. Supp.3d 151, 162 (D. Mass. 2017) (internal citations and quotation marks omitted).

IV.  <u>Discussion</u>.

By definition, a person is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Social Security Administration (SSA) employs the following five-step process in determining whether an applicant qualifies for benefits:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one [set forth in our appended list] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4); *Coskery v. Berryhill*, 892 F.3d 1, 2-3 (1st Cir. 2018); *Sacilowski*, 959 F.3d at 433.

Following the requisite sequential evaluation, the ALJ in this case made the following findings: 1) plaintiff met the insured status requirements of the Social Security Act through

December 31, 2016; 2) plaintiff had not engaged in substantial gainful employment since October 23, 2012, the amended disability onset date; 3) plaintiff had the following severe impairments: gout, mild osteoarthritis in the lumbosacral spine and in the knees bilaterally, and major depressive disorder; 4) plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526); 5) plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c), can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of 6 hours out of a workday, sit 6 hours out of a workday, can frequently climb stairs, ramps, and also can frequently kneel, stoop, balance, crouch, and crawl, and can perform simple, routine tasks, and can have occasional interaction with supervisors, co-workers, and the public; 6) plaintiff is unable to perform any past relevant work; 7) plaintiff was born on August 11, 1964, and was a younger individual on the alleged disability onset date, but subsequently changed age categories to closely approaching advanced age; 8) plaintiff is not able to communicate in English and is considered in the same way as an individual who is illiterate in English; 9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that plaintiff is not disabled, whether or not he had transferable job skills; 10) considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform; and 11) plaintiff was not under a disability, as defined in the Social Security Act, from October 23, 2012 through September 16, 2016, the date of the ALJ's decision. (TR at 42-54.)

Plaintiff challenges the Commissioner's decision on two fronts. First, Mr. Mercado contends that the Commissioner erred in evaluating the mental health medical evidence. Second,

14

he argues that the Commissioner erred in failing to apply the Medical Vocational Guidelines, i.e., the Grid, at step 5 of the sequential evaluation. Each of these contentions will be addressed in turn.

A. <u>Evaluation of Mental Health Evidence</u>.

Dr. Caussade and Dr. Marrero were treating sources, and, under the applicable regulations, their reports would generally be afforded controlling weight. *See* 20 C.F.R. § 404.1527.[7] The ALJ, however, gave their reports little weight. Mr. Mercado contends that, in these circumstances, the ALJ had to consider the factors detailed in 20 C.F.R. § 404.1527(d)[8] and, had he applied those factors properly, the ALJ would have given the opinions of Dr. Caussade and Dr. Mattero controlling weight. (#17 at 15.)

Contrary to plaintiff's argument, the ALJ conducted a thorough review of the record evidence, fully explaining the reasons for his conclusions. The ALJ's decision is well supported by substantial evidence and will not be disturbed.

Reviewing Dr. Caussade's records, the ALJ noted that Mr. Mercado's October 2012 intake interview indicated that plaintiff had prior mental health treatment since 2005 and that he complained of a long list of ongoing symptoms, but yet had been able to continue to work. (TR at 48.) Dr. Caussade diagnosed Mr. Mercado with major depressive disorder and prescribed Zoloft, Klonopin, and Ambien. (TR at 48.) Plaintiff remained on those same medications and treatment regimen through the date of the ALJ's decision. (TR at 48.)

---

[7] Because this case was filed before March 2017, there is no dispute that 20 C.F.R § 404.1527, entitled "Evaluating opinion evidence for claims filed before March 27, 2017," applies. (#17 at 11-15; #18 at 7-10.)

[8] Although plaintiff references § 404.1527(d) and quotes from the regulation at length in his brief, the subsections quoted are § 404.1527(c)(1)-(6).

The assessments offered by Dr. Caussade that plaintiff was unable to meet competitive standards and had no useful ability in all areas of mental functioning were extreme; the ALJ found they were "not consistent with the stable and at most moderate depression and anxiety documented in his treatment notes and in the record as a whole." (TR at 48); *see* 20 C.F.R. § 404.1527(c)(3) (the more evidence and support given for an opinion, the more weight it will be given); 20 C.F.R. § 404.1527(c)(4) (more weight is given to a medical opinion that is consistent with the record as a whole). The ALJ also relied on the state agency doctors who opined that the medications prescribed by Dr. Caussade were not the standard of care for the symptoms described, and that the excessive symptoms ascribed by Dr. Caussade were not confirmed by his treatment notes. (TR at 48.) Moreover, the symptoms described by Dr. Caussade, including ideas of reference, paranoia, deeply ingrained maladaptive patterns of behavior, and inappropriate suspiciousness, were not noted by Dr. Marrero. (TR at 48.)

The ALJ remarked that Dr. Caussade's report and progress notes reflect that Mr. Mercado maintained a relationship with a girlfriend and his family, for example, walking with his girlfriend for exercise and spending holidays with his family, indicating a wider range of social contact than reported. (TR at 48.) Although Dr. Caussade relied on plaintiff's medical condition as negatively impacting his ability to work, Dr. Caussade did not treat Mr. Mercado for physical ailments and, in any event, the record evidence showed that plaintiff's gout responded well to medications. (TR at 48); *see* 20 C.F.R. § 404.1527(c)(2)(ii) (the nature and extent of the treatment relationship, including the kinds and extent of examinations and testing, impacts the weight given the opinion). The ALJ also observed that Dr. Caussade's office progress notes documented a litany of plaintiff's subjective complaints, but not "objective findings such as mental status examinations to corroborate [Mr. Mercado's] reports." (TR at 49); *see* 20 C.F.R. § 404.1527(c)(3) (the more

relevant evidence a treating source provides to support an opinion, "particularly medical signs and laboratory findings," the more weight an ALJ will give to that opinion). The purported severity of those symptoms and complaints was not borne out in Dr. Toro's examination or the hospital records. (TR at 49.) Further, although Dr. Caussade included a list of medication side effects in his June 2016 opinion, those side effects were not documented in his progress notes, and no changes were ever made to plaintiff's medications to address those alleged side effects. (TR at 50.)

Certain symptoms observed by Dr. Caussade, such as ideas of reference and defensiveness, were noted in the hospital records with no further explanation, while the paranoia, disorientation, cognitive difficulties, and frank psychosis he assessed were not. (TR at 48.) The hospital records conflict with Dr. Caussade's report of "worsening depression with vegetative symptoms." (TR at 50.) For example, during his hospitalization, Mr. Mercado had "a cooperative attitude and unremarkable speech," "[h]is thought forms, perceptions, concentration, memory, and cognitive function were all intact," "[h]e did not have frank psychotic symptoms or suicidal ideation," and "[h]e maintained appropriate behavior in individual and group sessions and tolerated treatment." (TR at 50.) Plaintiff was released from the hospital with no change in medication and a referral to outpatient treatments. (TR at 50.)

The ALJ undertook a detailed review of Dr. Caussade's treatment notes and opinions in the context of the record evidence as a whole. The ALJ's determination that Dr. Caussade's treating source opinions were entitled to little weight is amply supported by substantial evidence in the record.

The second treating source was Dr. Marrero. The ALJ observed that the record shows over time a steadily decreasing frequency of treatment with Dr. Marrero, which would be consistent with an improved, stabilized condition, rather than ongoing, severe symptomology. (TR at 49); *see*

20 C.F.R. § 404.1527(c)(2)(i) (the frequency of examinations is a factor to be considered when weighing opinion evidence). As stated by the state agency psychologists, Dr. Marrero's report was not supported by any progress notes or other corroborating evidence. (TR at 49.) While Dr. Marrero repeatedly wrote that plaintiff "had lost more than 8 points of intellectual capacity," this estimate was not based on standardized testing, but rather Mr. Mercado's own subjective reporting. (TR at 49); *see* 20 C.F.R. § 404.1527(c)(3). Similarly, Dr. Marrero opined about plaintiff's physical ability to work, but he did not treat Mr. Mercado for any physical conditions; the opinion underscored the likelihood that Dr. Marrero's assessment was based on plaintiff's own statements rather than a record of clinical findings and evidence. (TR at 49.); *see* 20 C.F.R. § 404.1527(c)(4).

In 2016, Dr. Marrero saw plaintiff more frequently, but the ALJ found little objective evidence to support a worsening of his condition. (TR at 50.) Mr. Mercado's medications remained the same. Dr. Marrero did not report any signs of acute crisis, manic or psychotic symptoms, or any reason for the increase in treatment. Rather, the ALJ found that Dr. Marrero's

> assessments of seriously impaired to no useful ability in all areas of mental functioning and a need for four or more absences per month were not supported with treatment notes or specific findings. Instead [Dr. Marrero] made the same generalized statements about [Mr. Mercado's] symptoms that he made in past reports, which were not consistent with the limited course of treatment over the long period of treatment.

(TR at 50); *see* 20 C.F.R. § 404.1527(c)(2)(i).

The ALJ's determination that Dr. Marrero's treating source opinions were entitled to little weight is fully supported by substantial evidence in the record.

B. <u>Applying the Grid</u>.

Plaintiff contends that the ALJ failed to take his age into account at step five and, had his age been appropriately considered, he would have been found disabled under the Grid. (#17 at 15-

18

16.) This argument is without merit because the ALJ did address plaintiff's age and the applicable rules under the Medical Vocational Guidelines.

In his decision, the ALJ specifically found that Mr. Mercado "was born on August 11, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date." (TR at 52); *see* 20 C.F.R. § 404.1563(c). This is a correct statement of fact: on October 23, 2012, the amended alleged disability onset date, plaintiff was 48 years of age. The ALJ also determined that Mr. Mercado "subsequently changed age category to closely approaching advanced age." (TR at 52.) Again, this is a correct factual statement: on August 11, 2014, plaintiff turned 50 years old, which, under the regulations, is defined as "closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Although Mr. Mercado celebrated his 52nd birthday on the day of the hearing before the ALJ, i.e., August 11, 2016, he remained in the "closely approaching advanced age" category. *Id.*

The ALJ discussed the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, in his decision, writing "[i]f [Mr. Mercado] had the residual functional capacity to perform the full range of medium work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.26 and Rule 203.19." (TR at 53.) [9] Invocation of these two rules reflected the ALJ's understanding that Mr. Mercado's age category changed over the time his case was pending. The first cited rule, 203.26, applied to a "younger individual age 18-49," which would have covered plaintiff from his amended alleged disability onset date to the last day of his 49th year. The second cited rule, 203.19, applied to "individuals approaching advanced age," would have covered Mr. Mercado from his 50th birthday through the date of the ALJ's decision.

---

[9] The Medical-Vocational Rules applied by the ALJ were effective from October 29, 2008 to April 26, 2020. Any amendments that became effective on April 27, 2020, are not relevant here.

The ALJ properly acknowledged plaintiff's change in age category and considered the corresponding Medical-Vocational rules. Application of both of those rules, had Mr. Mercado retained the ability to perform a full range of medium work, directed a finding of not disabled.[10] There was no error.

### V.  Conclusion and Order.

The ALJ's decision that Mr. Mercado was not under a disability, as defined in the Social Security Act, from October 23, 2012 through September 16, 2016, is supported by substantial evidence, notably the opinions of the state agency psychological consultants, Dr. Cortes and Dr. Nieves, which he gave great weight. The mental health evidence was correctly analyzed applying the relevant factors under the regulations, and the decision to afford little weight to the treating sources is supported by substantial evidence. The ALJ properly recognized the change in Mr. Mercado's age category during the pendency of this case and accounted for that change when discussing the Medical-Vocational rules, a decision that is supported by substantial evidence.

For the reasons stated, the Motion for Order Reversing the Commissioner's Decision (#17) is DENIED and the Motion for Order Affirming the Decision of the Commissioner (#18) is GRANTED. Judgment shall enter for defendant.

October 14, 2020                                    /s/ M. Page Kelley
                                                    M. Page Kelley
                                                    Chief United States Magistrate Judge

---

[10] The ALJ ultimately relied on vocational expert testimony in reaching his disability determination, not the Grid, because Mr. Mercado's "ability to perform all or substantially all of the requirements of [the full range of medium work] ha[d] been impeded by additional limitations." (TR at 53.)